Good morning, Your Honors. May it please the Court, Sassoon Nalbandian appearing on behalf of Petitioner Hago Piasayan, and Madam Clerk, I'd like to reserve two minutes of my time for rebuttal, please. Your Honors, in this case, the key issue is whether or not the BIA abused its discretion in denying the motion to reopen on ineffective assistance grounds. Can I ask you a question which is irrelevant to what we're talking about? Sure. What is the petitioner's legal status now? Petitioners? He does not have any status. He still doesn't? He still does not have any legal status, because the wife had filed with other counsel three months late for asylum, unfortunately, so she was granted withholding, which does not grant him derivative status, sadly. Okay. And, Your Honors... Well, as I understand it, okay, you've answered my question. Yeah, he does not have any status. All right. Your Honor, the government, in footnote 9 of its brief on page 17, argues that the evidence that Petitioner's Counsel, in its brief, made a mistake in that the proper testimony was previously available, because during the direct appeal, that evidence was available. However, this Court in Basin v. Gonzalez has quoted as follows, the government's argument that the information was previously available because it became available during dependency of the appeal to the Board does not comport with the statute or the regulations. Under HCFR 1003.2c1, the previously available evidence clearly states, and in Basin, the Court highlighted at the former hearing, not during direct appeal. So, in this case, correct, I may have done it differently and done all the Lazada factors on direct appeal. However, in this case, it was previously unavailable evidence, because the evidence became available when Mr. Yassayan consulted with new counsel and realized what Ms. Mahdessian had done, who has been reprimanded repeatedly by the State Bar, incidentally. And in this case, Your Honor, the second issue is whether there was prejudice. And when you take his declaration, assuming to be true, which this Court has said, unless there is inherent unreliability or unbelievability in the statement, we must assume everything to be true, he is stating that he had no idea what his attorney was doing. And if we read the transcript, the attorney comes in and says, we would like to withdraw the asylum application. The judge never issues a decision on that request to withdraw. Nobody, neither the judge nor his own attorney, which I always do in court, and nobody asks him, if you wish to withdraw your application, we have no idea whether it's a knowing or voluntary withdrawal of his asylum application. I guess my biggest problem, again, I'm back to standard review here. Sorry that I get stuck on that. But it seems to me that the petitioner has a motion to reopen here. If he's to have a motion to reopen, that's got to be on something that is new, newly discovered, change of circumstances. The material submitted was not available, could not have been discovered before the prior hearing. And I guess they had one decision in front of them. He did not submit the documents that he could have submitted. And so now he comes back with a motion to reopen and submits documents he could have submitted previously. Yes, Your Honor. It seems to me we're over. Well, the motion could have been submitted previously, and I don't know how I can get there. Your Honor, because the previously available evidence pertains to whether there was evidence, whether the individual knew or could have known that his attorney, who was defrauding him, was, in fact, withdrawing his asylum application, which is his livelihood. If he returns to Armenia, he could face persecution. So basically, in this case, Your Honor, the evidence became available, newly available, when he consulted with new counsel, which was during the direct appeal to the BIA. And I understand what Your Honor is saying in terms of newly available. But under Basin, if newly available evidence becomes available during the direct appeal and then it's brought up again in the motion to reopen, that case is directly on the point. Well, just a minute. As I understand it, on May 10th he hires a new lawyer because he's wanting to do something about his old lawyer. And the BIA grants him 21 days. Then he files a brief, says he's a victim of the abuse of ineffective assistance of counsel. But I guess here we are. The IJ says, I'm looking at the declaration of Yakov. And this is a bad pronunciation. Yakov Yasayan. I'm looking at the motion to continue by Rita Madasian. I'm looking at the state bar record of Rita Madasian. I'm looking at the plan for discharge. They requested time to comply with matter of Lozada. They never filed the documents, never filed a motion to get more time. It's over. Your Honor, you mean the BIA's decision. But we're not reviewing the BIA's direct appeal. I know, but that's what the IJ said. It was in front of the IJ. Your Honor, in front of the IJ, the IJ never addressed Rita Madasian's record or ineffective assistance. Those claims were brought up on direct appeal, not in court. Well, but it's a motion to reopen in front of the BIA. That's correct. About what happened in front of the IJ. And you had a motion in front or an appeal in front of the BIA. And so you're presenting these documents to the BIA. That's correct. And the BIA simply stated that the Lozada factors were not adhered to. And on the motion to reopen, they did adhere to the Lozada factors. And it was never appealed. What was never appealed, Your Honor? The BIA decision. The BIA said that they failed to comply with matter of Lozada. That's correct because counsel probably realized that they had not complied with the Lozada factors and they were in the process of doing so. The motion to reopen, as long as it's timely filed, Your Honor, within 90 days of the BIA's final order on direct appeal, all it needs to show is that there was evidence previously unavailable. And the evidence was unavailable during the court hearing under Basin, government's argument that the evidence became available on direct appeal, while it is concerning for me as well how counsel approached it, Your Honor. That evidence became available on direct appeal the second he consulted with Inman and Associates, not while he was with Ms. Mahdessian. The evidence became available at a later point. So, Your Honor, in this case, basically all we would ask is to send it back, give the individual his day in court on whether or not he has a fear of returning to Armenia. And, I mean, he has clearly expressed he has a fear of returning to Armenia. His wife has withholding here. His children have asylee status in the interest of justice as well, Your Honor. Well, I can see your argument on the interest of justice because you're saying now not only his first attorney was bad, but his second attorney was bad. Well, Your Honor, we are looking into that issue as well. I mean, that's what it seems to me you're saying because the second attorney, with his motion to reopen in front of the BIA, I mean, I don't know that he did any better work. That's correct. The Lozada factor should have been adhered to with the direct appeal, and they adhered to it on the motion to reopen. But eventually, the Lozada factors were adhered to, and the motion to reopen, since it was timely filed and the Lozada factors were adhered to, the question then becomes was the evidence previously available and was he prejudiced? And in both cases, the evidence was not previously available, Your Honor, for the same reason as directly quoted in Basin under 8 CFR 1003.2. It had to be available at the previous hearing. If it was available at the previous hearing, the respondent, as he said in his declaration, would have simply stated, I do not wish to withdraw my asylum application. Your Honor, I reserve the rest of my time for rebuttal at this point. Thank you. Thank you. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General of the United States. The issue in this case is whether the Board abused its discretion in denying a motion to reopen that was nothing more than an attempt to relitigate an ineffective assistance to counsel claim based on evidence that Mr. Yassine could have and should have presented the first time he raised that ineffective assistance claim. And as was stated, he, on direct appeal, presented an ineffective assistance to counsel claim but did not meet the LAZADA procedural requirements for such a claim. He only put forth a declaration. Then the Board issued an order on the direct appeal affirming the immigration judge and also saying your ineffective assistance to counsel claim lacks merit because you didn't meet those procedural factors. He did not petition for review that first Board decision. And so issues of whether the LAZADA factors needed to be met here and so forth are not before the Court. The main issue here is whether Mr. Yassine met his heavy burden to reopen the case. There needs to be new and previously unavailable evidence. There needs to be some reason for the Board to reopen a case after it's decided. Motion to reopen is highly disfavored and the alien only gets one motion. Even the Board has broad discretion in whether to grant or deny such a motion. Even the regulations specifically state that even if an alien puts forth a prima facie case for some form of relief, the Board may deny a motion. So I guess I read the BIA decision when it denied the motion to reopen on April 19, 2009. There's some language in there that's a little uneasy to me. It says, in this regard, there is no indication that respondents sought to submit this information prior to our October 22, 2004 decision. Does that say that the BIA was open to receiving more information until then? Your Honor, yes, I believe so. Frankly, the hearing was over on June 1, 2004. And he had all this stuff in front of him. He said, hey, I'd like to comply with the matter to Lozada, so are we really suggesting in this particular instance when he says, I want some more time to comply with the matter of Lozada, and the BIA doesn't say whether he gets it or whether he doesn't, that they're going to wait until the time of their decision to decide whether he's submitted adequate information? I see your point, Your Honor. And by that, yes, on June 1, 2004, that's when he submitted his brief before the Board and when he mentioned that all the Lozada requirements had not been met yet. But that statement, once you look at the new evidence that he finally submitted on the motion for open, all of that evidence could have been submitted on that day, June 1, 2004. We have a bar complaint filed by Mr. Yassine against his former attorney, and that was dated May 28, 2004. Well, we're really thinking about a letter written to Ma telling her that he was dissatisfied with the representation. Now, he didn't do that until after the hearing. Is the Board saying if they had submitted that letter to Ma that they would have done something about it with the language I read to you? I think not just the date of that letter, but the substance of that letter could have been written prior to the filing of their direct appeal brief. There was nothing new in there that could not have been submitted when you first submitted it, such as the bar complaint and also the signed agreement between Mr. Yassine and his former counsel. That was dated back in August of 2003. So all of that evidence was previously available and or discoverable even prior to that June 1, 2004. I understand the concern with, I don't know, the lack of clarity maybe with that sentence in the Board decision. The thing that worries me about that is that we're now saying in 2009, hey, we've seen it all before, but it seems to me that one phrase is saying, had we seen that, it might have made a difference. I would contest that because in the following sentence, it says furthermore, on this record, which you didn't have the letter to Ma in there, on this record we find the new evidence presented with the motion is insufficient. Correct. So that's why I ask you about that. Counsel, if you take it back to Chase, he eventually probably complied with the society. We have a family that evolved in the United States. This man is an ethnic Turk who is by itself something that is to persecution. He certainly had the persecution. He's a Baha'i, which makes him subject to material persecution. Why isn't the government looming at this case, saying he had terrible lawyers, he eventually complied, and it was a terrible, terrible mistake on the part of his first lawyer to withdraw his societal claim and say we'll just wait for the court verdict. Should we send this to mediation? What should we do with this case? It's not one where justice would allow us to send this guy back to be persecuted. Your Honor, I understand your concerns, and this is a sympathetic case. An alien such as Mr. Sine may always approach DHS ICE District Council and propose a joint motion to reopen when he has these immediate family members with status. The record does not reflect whether that happened. This case has been in mediation, but what occurred or did not occur in mediation cannot be discussed. I guess I'm trying. My colleague presents a very, I mean, I know it went to mediation once and it didn't go, and I guess I'm trying to figure out why it didn't. It seems to me that if I go on the alternative conclusion by the BIA that there's no new evidence sufficient to change the result of the prior decision, I'd say they're out to lunch. I mean, the bottom line, there was an affidavit explaining the agreement. There was evidence about prior counsels informed of the allegations now. There was a complaint, and therefore, I don't know how they got to that decision, frankly, on the alternative conclusion. So if I'm going to get them there, I've got to talk about the first conclusion, which is what I talked to counsel about. Right. And so it says to me, you know, with that one phrase, which I kind of tried to really make you think about, I was saying to myself, boy, why isn't the government doing something to try to do a mediation here? Because you could very easily get it back in your face saying no. Your Honor, there are a few things. I would have no objection if counsel wanted to put this back in mediation to seek a joint motion to reopen before DHS. There needs to be efforts on both sides to get that accomplished. I understand the sympathetic nature of this case. And I think with respect to the board's alternative conclusion, not changing the fact, in the administrative record here, all that is known is that the son was granted asylum. There's no underlying facts to compare how similar his case was to his father's. The wife, we only know that she was applying for asylum. So on the administrative record, that's all that's before us. And the last thing is that he withdrew the asylum application in April 2003. Four months passed. And then the immigration judge's decision, so he couldn't have approached. Well, he withdrew, but he withdrew with his counsel. It's terrible. Right. So, I mean, he did withdraw. And so, therefore, he's not exhausted as to what the real conditions of asylum and withholding are. That's absolutely true. But he had bad counsel helping him do that. And so I'm looking at the BIA's conclusions, which is why I focused on that phrase and said, boy, it seems to me the government needs to think about this. Your Honor, and as I said, Mr. Yassine, if he chooses to request to put this case in mediation, to approach DHS with a joint motion to reopen, I would not object. Thank you, Your Honor. You've got two pretty, I mean, one could say two judges who've not necessarily come at these cases from the same approach, Judge Fletcher and myself, who are both saying to you, this doesn't look good for the government. I understand, Your Honor. All right. Your Honor, with regard to mediation, I will discuss it with my client and with government as well. However, I would like to, in rebuttal, just focus on the first part, which was causing, Your Honor, concern regarding the October 2004 decision phrase. Your Honor, I agree that that's not the standard. The standard is whether the evidence was previously unavailable at the time of the hearing, not at the time of the final BIA decision, whether there was an appeal filed with the BIA. I hope you're really not going to go too far that way because your client hadn't written his letter by then. That's correct. He hadn't written his letter by June 6th, and he had plenty of time to write it. That's correct, Your Honor. He did. I agree in terms of what he should have done or what counsel should have done. But had there not even been a direct appeal filed, the law is within 90 days, if you file a motion to reopen and there's previously unavailable evidence, the BIA has to consider that evidence. And when he consulted with new counsel after previous counsel, as Your Honor indicated, the counsel had gone and withdrawn. This counsel has been reprimanded repeatedly, never in court asked by the individual's own declaration, never asked him if he wanted to withdraw. The judge who asked very minute questions, detailed questions, never asked him, do you wish to withdraw your asylum application? Your Honor, in this case, I think the issue is basically whether or not the BIA abused its discretion in not reviewing the Lozada ineffective assistance based on the new facts in the motion to reopen, and should they have remanded it, reviewing all the evidence, taking everything into account, and reviewing whether or not the declaration was inherently unreliable, which it clearly was not. Thank you very much, Your Honor. Thank you. I would suggest to your client as well that at least as to one person you faced, that person was giving you the business on the first of the two alternatives of the BIA decision. And what had happened below, and what the situation was below, and therefore I think it's in his best interest as well to get some mediation done. Okay. Thank you, Your Honors. Thank you.
judges: B. Fletcher, N. R. Smith, Brewster